[Civ. No. 22965.   Second Dist., Div. Two.   Apr. 29, 1958.]

JAMES J. LOCKHART, Appellant, v. JOE MARTIN et al., Defendants; DENTON O. HYDER, Respondent.

James A. Starritt and Guy T. Graves for Appellant.

Robert Sikes for Respondent.

FOX, P. J.—This is an appeal from a judgment of nonsuit.

Plaintiff was a passenger for hire on defendant's fishing boat "Sport Fisher." Plaintiff was an experienced fisherman and had fished many times on this boat. It was the practice of the operators of the boat to anchor it in a particular spot for a period of time for fishing and then move to another location. There were anchovies and other bait on board in a tank where each fisherman would get his bait as he needed it. Plaintiff had gone to the bait tank for live bait many times on the day in question prior to his fall. At various times plaintiff had observed anchovies and other bait on the deck of sport fishing boats; he had himself upon occasion dropped live bait on the decks of such boats and had seen other fishermen do likewise. It was the custom on the Sport Fisher for the fishermen to change from one fishing post to another from time to time. Plaintiff had been fishing on the right side of the boat when the fishermen were notified to change positions. He thereupon went to a new location on the left side. When plaintiff made his move to the left side there was no bait on the deck in the area of his new location. Plaintiff was at this location two or three minutes before he fell. He was by himself; no one had joined him there.

The captain of the boat announced that he was going to move the boat. Plaintiff proceeded to reel in his line prepara-

tory to placing his fishing pole in a rack when he fell. He described the incident in this fashion: "There was a sudden jerking of the boat and I stepped forward and as I did so I stepped on an anchovy and my feet went up in the air and I came down on one knee. . . ." The movement "wasn't a natural roll of the boat. It was sort of a jerk" and threw him off balance. Plaintiff thought that the sudden movement of the boat might have been caused by the raising of the anchor preparatory to changing the boat's location, or by a wave striking the side of the boat.

Plaintiff's right knee was injured in the fall. He brought this action to recover damages for the injury.

The cause of plaintiff's fall was the sudden movement of the boat which caused him to lose his balance. There is no evidence that the sudden movement of the boat was due to any negligence on the part of defendant or his employees. Plaintiff contends, however, that the doctrine of res ipsa loquitur is applicable and that he thus established a prima facie showing of negligence; hence it was improper to grant a nonsuit. Defendant, on the other hand, argues that the doctrine of res ipsa loquitur is not here applicable.

■ On this question we stated in *Redfoot* v. *J. T. Jenkins Co.*, 138 Cal.App.2d 108, at pages 116-117 [291 P.2d 134]: "The most recent decisions of the Supreme Court prescribe as the ultimate test of applicability of res ipsa loquitur an answer to the question of 'whether it can be said, in the light of common experience, that the accident was more likely than not the result of their [defendants'] negligence. [Citing cases.] "Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply."' [Citation.] The rule is thus phrased in *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344] : 'In summary, it appears from the foregoing that, as a general rule, res ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible.' [Citations.]

■ The search for the existence of such a probability of negligence on defendant's part presents a question of law in the case at bar, for the inference when it arises is a compulsory one [citation], and the question of whether or when it arises does not present a question for the jury's determination."

Applying these principles to the instant factual picture, it is clear that the trial judge reached the correct conclusion in holding that res ipsa loquitur was not here applicable. It is a matter of common knowledge that the movements of fishing boats and other small water craft are constantly affected by the waves and thereby made unsteady, and that this is true without regard to the care exercised in their operation. The bigger the waves the more vigorous is the impact on the boat and the more severe and sudden the lurch or jerk caused thereby. Anyone who has ever been on such a boat or who has observed their movements from the shore, particularly when the tide was coming in, has observed how the waves upon occasion cause these boats to pitch and churn. Such vigorous and unpredictable movements may readily cause a person to lose his balance and fall as did the plaintiff here. This is simply one of the natural hazards of this type of venture. In the circumstances of this case it was at least equally probable that the sudden movement of the boat that threw plaintiff off balance, resulting in his fall, was caused by a wave hitting the boat as that it resulted from any negligent act or omission in operation of the boat. Accordingly, it cannot be said that it was more likely than not that the accident was caused by the negligence of defendant, and hence the case was not a proper one for the application of the doctrine of res ipsa loquitur. (*LaPorte* v. *Houston*, 33 Cal.2d 167 [199 P.2d 665]; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344]; *Redfoot* v. *J. T. Jenkins Co., supra.*)

Plaintiff's authorities are distinguishable from the instant situation in that they all grew out of the movement of transportation facilities on land; hence they were under the complete control of the operators and were not subject to the unpredictable lashing of the waves.

There is no merit in the suggestion that plaintiff's fall was caused by his stepping on an anchovy. That was merely an incident in the fall. It was the movement of the boat that caused him to lose his balance and fall. But, in any event, plaintiff failed to show that defendant's negligence was responsible for the anchovy's being on the deck in the area of his fishing station. Plaintiff testified "there was no fish on the deck" at his new fishing position on the left of the boat; that he was alone there and that no one joined him, and that he was there only about three minutes before he fell. There is no evidence that either the defendant or any of his em-

ployees placed the anchovy on the deck or that defendant had actual notice or constructive notice of its presence there by reason of the length of time it had been on the deck in plaintiff's fishing area. (See *Oldenburg* v. *Sears, Roebuck & Co.*, 152 Cal.App.2d 733, and cases summarized on pp. 746-748 [314 P.2d 33].) In analyzing this aspect of the case the learned trial judge concluded that "the only fair inference to be drawn is that he himself must have dropped the anchovy on the deck."

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied May 22, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 25, 1958.